HARDY, Judge.
Plaintiff seeks damages for the destruction of his automobile and for personal injuries in the nature of nervous shock and superficial bodily injuries allegedly caused by the negligent operation of a passenger train of the defendant. After trial there was judgment rejecting plaintiff’s demands, from which he brought this appeal. Subsequent to the institution of this suit plaintiff died, and, by a proper motion, his surviving spouse has been substituted as party plaintiff in her own right and as natural tutrix of her minor children.
The accident occurred shortly after 9:00 A. M. on December 29, 1946, at a railway crossing in the Village of Marthaville, Nat-chitoches Parish. Plaintiff was driving his car at a slow rate of speed south along the highway cutoff which was crossed by defendant’s railway tracks. Defendant’s passenger train, consisting of a locomotive, tender, a mail and baggage car and two passenger coaches, was traveling west. To the west of the gravel highway crossing some railway flat cars loaded with pulpwood were standing on a spur track located north of defendant’s main line, there being approximately eight feet distance between the near rails of the main and spur tracks. The nearest pulpwood car is shown to have been only some five feet west of the highway, and it is established that this obstruction effectively blocked a view of defendant’s main line track to the west. Approaching the tracks from the north a Louisiana “STOP” sign is located 68 feet from the tracks. It is shown that there is- an embankment north of the tracks and to the east of the highway; that some crossties were stacked between the embankment and the stop sign above referred to, and finally that there is a “DERAIL” sign between the embankment and the tracks, all of which plaintiff claims obstructed the view of defendant’s main line track to the east.
Although the day was cloudy and rain had fallen, it is not shown that rain was falling at the time of the accident. The windows of plaintiff’s car were closed by reason of the cool weather. Plaintiff charges that the accident was the direct result of defendant’s negligence in permitting the existence of the named obstructions; in failing to give proper warning signals and maintain proper lookout; in neglecting to bring the train to a stop and thereby avoid the accident; in proceeding at an excessive speed of 45 miles per hour and in permitting the crossing to become muddy, slippery and consequently dangerous to highway traffic.
In argument and brief counsel for plaintiff has urged the doctrine of last clear chance, and, while we find no pleadings which would support this proposition, no objection thereto has been made on the part of defendant.
There is not any material conflict of testimony and the facts appear to be well established. Plaintiff did not bring his vehicle to a stop either before or after reaching the trades but proceeded slowly across the spur track and onto the main track before he observed the approach of defendant’s train, and brought his car to a stop with the front wheels in the main track. Plaintiff had sufficient time and presence of mind to open the door and step out o-f the car before it was struck by the train, and thus escaped any serious physical injury. From plaintiff’s testimony we think it is clear that for some little distance before his car reached the spur track north of the main line, and continuously thereafter, his full attention was directed to the effort of attempting to make an observation of the main line track to the west, in which direction the view was seriously obstructed by the loaded pulpwood cars. It is true plaintiff testified that he made observation to the east and did not perceive the approach of the train, but it is conclusively demonstrated by the un-controverted testimony of one of defendant’s witnesses that he could and should have seen the approach of the train. This witness testified that from an automobile whose wheels were placed at the north rail of the spur track the clear view to the east was approximately three-quarters of a mile; that twenty-eight feet north of the *623 main line the visibility was twelve to fifteen hundred feet, and at 32 feet north of the spur track the visibility was approximately 500 feet.
Plaintiff failed to perceive the approach of the train until he heard a whistle blast at a time when his car was almost upon the main line. Then upon looking and observing the approach of the train he applied his brakes, brought his car to a stop with the front wheels between the main line tracks and then, hastily and fortunately, evacuated the very precarious position in which he found himself.
The testimony shows that the engineer of the train, who had perceived plaintiff moving slowly over the crossing, applied the emergency brakes some 200 or 250 feet from the crossing when he concluded that plaintiff neither intended to stop before reaching the track nor to proceed across. When the train was brought to a stop the rear of the last coach was some 50 feet west of the crossing. From the testimony it is estimated that the over-all length of the train was approximately 266 feet, and according to the engineer’s testimony approximately 500 feet was necessary in making an emergency stop. It is thus observed that the testimony as to these distances must be unusually accurate.
The testimony of the engineer and fireman as to the blowing of the whistle and the sounding of the bell is uncontradicted. The first blast of the whistle was sounded some 900 feet east of the crossing and was followed at short intervals by four blasts, and the automatic bell ringer having been set at or about the time of the sounding of the first whistle blast, the bell continued to ring up until the time of the collision. The allegation as to the dangerously slippery condition of the crossing was not established, and, in fact, this basis of negligence has not been seriously urged. The speed of th« train was fixed by the engineer as being approximately 35 miles per hour, which under the circumstances could not be regarded as excessive.
Under the facts related we find no negligence on the part of the operators of defendant’s train, but we pretermit detailed discussion of this proposition inasmuch as we are completely convinced that plaintiff’s negligence was the sole and proximate cause of the accident.
The facts which we have narrated speak for themselves, and it is evident upon analysis that plaintiff was grossly negligent in failing to make proper observation to the east, the direction from which the train approached. Conceding the existence of the hazardous obstruction of view to the west, because of the pulpwood-laden cars, there can be no reasonable ground for holding that such an obstruction excused plaintiff from the duty of making observation of the tracks to the east. In his negotiation of the crossing plaintiff had ample opportunity for a clear view of the tracks eastward, in the course of his approach to the main line track, for distances within the extreme brackets of 500 feet to three-quarters of a mile. We considered a somewhat similar factual situation, and disposed thereof, in Radial v. Texas & Pacific Railway Co., La. App., 61 So.2d 525, 529, in these words:
“Obviously it is not enough simply to look, nor to listen, and therefore the traveler who ventures to effect a crossing of a railway track is enjoined not only to look, but also to listen, and finally to stop in order that he may make a careful examination of the track for the purpose of determining the possible approach of railway trains.’’
Certainly there is no support for a contention that such a careful examination of railway tracks is to be made only in one direction.
We do not find there is any ground for reliance upon the doctrine of last clear chance. The application of this doctrine, as has been many times observed, requires a showing of superior knowledge on the part of the members of the train crew. And, further, it is well established that negligence does not attach simply by reason of the assumption of the members of a train crew that a motorist will not drive upon the track in the path of an oncoming train. Two of the latest pronounce *624 ments of this doctrine are found in Hanks v. Arkansas & L. M. Railway Co., La.App., 62 So.2d 139; Bordenave v. Texas & N. O. R. Co., La.App., 46 So.2d 525.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.